[Civ. No. 227. Fourth Appellate District.—September 26, 1930.]

JESUS HERNANDEZ MONTANEZ, Appellant, v. ELIZA-BETH MORTON BEARD et al., Respondents.

586

Theodore Gottsdanker for Appellant.

Culver & Nourse for Respondents.

MARKS, Acting P. J.—Appellant is a sister of Sixto Hernandez, deceased. On June 11, 1926, he was killed in a collision with an automobile driven by Elizabeth Morton Beard, who was at that time acting within the scope of her authority as an agent and employee of her co-defendant George H. Morton. The action is for damages for wrongful death of the deceased, under the provisions of section 377 of the Code of Civil Procedure. The complaint alleges negligence in general terms, and also an excessive speed of fifty miles an hour of the car driven by Mrs. Beard. The answer denies negligence and alleges contributory negligence on the part of the deceased. After the close of appellant's case the respondents moved for a judgment of nonsuit upon the grounds first, that appellant had failed to establish any negligence on the part of respondents in the operation of the automobile which caused the death of deceased, and, sec-

ond, upon the ground that appellant failed to show any damage or pecuniary loss which would entitle her to a judgment against respondents. The trial court granted the mo-. tion on the first ground and denied it on the second.

■ This case comes before us upon an appeal from the judgment of nonsuit which was entered after the granting of the motion, and presents the question of the sufficiency of the evidence under both grounds specified. If the judgment of nonsuit was correctly rendered on either ground, it is well settled that it must be affirmed by this court, even though the trial court was in error in its rulings upon one or both of the particular grounds specified in the motion.

■ The evidence in the case shows that the deceased had neither father, nor mother, wife nor child surviving, and that appellant, his sister, was his only living heir at law. He was twenty-four years of age at the time of his death. He had lived with appellant as a member of her family, since the age of about eight years and had been steadily employed for several years prior to his death, earning between $80 and $100 per month. It was his custom to give his pay checks to appellant, who deposited them in a bank to her own credit. She gave deceased various sums of money which he required to pay for his clothes, pleasures and incidental expenses, using the balance for the support of her family, including the deceased, and in the purchase of a home for herself and husband. About $600 of the earnings of deceased were used in the purchase of this home, and at the time of the death of deceased, she had in her bank account approximately $200 of his earnings.

This case was originally appealed to the Supreme Court. While it was still pending there, repondents filed a motion to affirm the judgment because of the failure of appellant to print pertinent portions of the transcript. In denying the motion the Supreme Court held as follows:

''The evidence set out in the brief by question and answer, shows that the deceased was some twenty-four years of age at the time of his death and had resided for more than seventeen years in the home of the plaintiff and her husband as a member of their family; that all of his earnings had been given to them; that at the time of his death he was earning from forty to fifty dollars, twice a month, which it seems he

likewise paid over to the plaintiff and her husband. The evidence shows one incident of a gift of $200 by decedent to .plaintiff, also that he paid practically one-half of the purchase price on a house and lot for her, which cost a total of $1,200. In other words, enough of the evidence is set out to show that the plaintiff and her husband had stood *in loco parentis* to the decedent for many years. In the absence of any contrary showing we are not prepared at this time to hold that the plaintiff suffered no pecuniary loss at the death of her brother. It was not necessary to set out all the evidence on this subject, if enough appears to show that this question should have been left to the jury, and we are not prepared at this time to say that such a showing was not in fact made." (*Montanez* v. *Beard,* 207 Cal. 379 [278 Pac. 858].)

We have examined the evidence in the record and believe that it brings the case within the language of the foregoing decision and also within the rule laid down in the case of *Bond* v. *United Railroads,* 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366, 369], in which the court held as follows:

"It would seem to follow from this rule absolutely limiting the damages in every case to the pecuniary loss occasioned by the death, and upon a consideration of that justice which the statute itself invokes, that his pecuniary loss should be extended to, and should include, all pecuniary loss of every kind which the circumstances of the particular case establish with reasonable certainty will be suffered by the beneficiary of the statute in the future, because of the death of the victim. Nothing less would be a just compensation for the injury, and anything more, or anything in the realm of improbability, conjecture or mere fancy, would be beyond the purview of the statute and unjust to the defendant. In many cases where the minor is near majority, the certainty of pecuniary loss from his death, to the parent, accruing after his minority, would be as great as the certainty of such loss during minority, and the expectation of benefits for many years thereafter would be as well established as in the case of the death of an adult. In other cases, where the child is a mere infant, the expectation of pecuniary benefits to accrue in the years following its arrival at majority would

be so remote that it could not justly be made the basis for a large addition to the damages. So in the case of some adults such benefits would be exceedingly improbable. But the statute prescribes but one rule for all cases: 'Such damages may be given as under all the circumstances of the case, may be just.' The manifest effect of this language is that in all cases to which the rule applies it is to be left to the jury to say, upon a consideration of the facts, what amount is a just compensation for the financial loss which the evidence shows will probably be directly or proximately caused by the death of the victim.''

It would appear from the evidence that respondent was the sole heir at law of deceased and that she had, at the time of his death, reasonable expectations of receiving from him financial benefits by contributions from his earnings, had not his death cut off the source of these contributions.

On the question of the negligence of Mrs. Beard, the record is far from satisfactory. It seems that a blackboard map or diagram of the scene of the accident was used in the court below. All of the witnesses used this map or diagram in describing the acccident and located on it the position of the deceased upon the road and of respondents' automobile and its course, both before and after the collision. It is not reproduced in the record, and this leaves much of the testimony entirely unintelligible to us. When a witness testified that at the time of the accident the deceased stood ''here'' and the automobile traveled ''along here'' and the body lay ''there'', ''here'', ''along here'' and ''there'' being indicated by marks on the diagram, their testimony may have been perfectly clear in the trial court, but it is unintelligible to us. Appellants should have such diagrams photographed and incorporated in the records on appeal. Otherwise we may be confronted with a situation wherein we have to affirm a judgment because of a failure of the record to show error.

There is some testimony in the record concerning the accident which we are able to comprehend. The collision occurred on the public highway connecting the towns of Corona and Elsinore. Mrs. Beard was driving the automobile from the first-named city to the latter. About eighteen feet in the center of the road was paved. There were shoul-

ders on each side of the pavement about seven feet wide at the point of the accident. The deceased was standing or walking upon the right shoulder of the pavement, from the direction in which the automobile was approaching. One witness placed him standing four or five feet out on the shoulder from the edge of the pavement. Several witnesses testified that the automobile swerved to the right off from the paved portion of the highway on to the shoulder, at the time of the collision.

The right front fender of the automobile struck the deceased and threw him on to the pavement. His skull was fractured by the impact. The accident occurred at about 5 o'clock P. M., at which time the visibility was good. Apparently there were no obstructions on the road to prevent Mrs. Beard from seeing the deceased.

■ It is the well-settled law in this state that upon a motion for nonsuit the court must put upon the evidence a construction most favorable to the plaintiff. It must also give the plaintiff the benefit of every favorable inference fairly deducible from the evidence, and every favorable presumption fairly arising from it. (*Gregg* v. *Western Pac. R. R. Co.*, 193 Cal. 212 [223 Pac. 553].)

■ With this rule of law in mind, we must conclude that the evidence most favorable to the plaintiff showed that the deceased was standing or walking upon the shoulder of the road a distance of five feet from the pavement and that Mrs. Beard, upon approaching him, swerved her car toward him, which action on her part caused the accident and resulted in the death of the deceased. We believe that these facts made out a *prima facie* case for the plaintiff and that a *prima facie* case having been established, the motion for nonsuit should have been denied. (*Scheuermann* v. *Kuetemeyer*, 186 Cal. 225 [119 Pac. 13]; *Gregg* v. *Western Pac. R. R. Co.*, *supra.*)

As the case must be retried, we wish it distinctly understood that by what we have said, we are not deciding that Mrs. Beard was actually guilty of negligence or that the deceased was not guilty of contributory negligence. We are merely holding that the evidence before us was sufficient to make out a *prima facie* case of negligence on the part of Mrs. Beard. Her conduct in the operation of her automobile

may have been entirely justified by other circumstances which do not now appear in the record, or the deceased may have been guilty of negligence that contributed to the accident. She should be put upon her proof to overcome, if she can, the *prima facie* case of her negligence made out by the witnesses for the appellant.

Judgment reversed.

Barnard, J., and Warmer, J., *pro tem.*, concurred.