[Civ. No. 7869. First Appellate District, Division Two.—September 1, 1931.]

JULIA M. WESSLING, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Charles A. Wetmore, Jr., and Treadwell, Van Fleet & Laughlin for Appellant.

Dozier & Kimball, Christian F. Kimball and Thomas B. Dozier, Jr., for Respondent.

NOURSE, P. J.—Plaintiff sued for damages for the death of her adult son, Lester G. Wessling. The cause was tried with a jury, which returned a verdict for the defendant. From the judgment on the verdict plaintiff has appealed upon typewritten transcripts.

On July 1, 1926, at about 5:45 P. M. Albert and Lester Wessling left the latter's home in the city of Richmond in an automobile owned by Lester Wessling and his mother and driven by Lester. The brothers were on their way to the postoffice in the business section of the city and their route took them over Barrett Avenue to the crossing of defendant's tracks. As they approached the crossing from the east they stopped to let train number 48, which was proceeding northerly, pass. They then drove slowly over the crossing and when they reached the westerly track they were struck by train number 7, which was traveling to the south into the Richmond station. The driver of the car, Lester Wessling, had passed over this crossing frequently and was thoroughly familiar with the surroundings. An automatic "wigwag" was maintained on the northeast corner of the crossing. A flagman was housed at the southwest corner. This flagman ordinarily stood near the westerly track when a train was passing from the south and near the easterly track when a train was passing from the north. He signaled the danger of an approaching train by holding upright a stop disc by day and a lantern by night. The "wigwag" was controlled by an electric switch. The current was cut off by the operation of the train at a point a few feet beyond the crossing, but this "wigwag" continued to oscillate from ten to twenty seconds after the electric current was cut off. As the Wesslings started to cross the tracks this "wigwag" was moving, but, whether the movement was caused by the passing train or from a new contact made by the approaching train No. 7, was, of course, impossible to determine.

Plaintiff rested her case upon the alleged negligence of defendant in the operation of train No. 7 at an excessive speed and the failure of the flagman to be in his accustomed place and to give the usual or any warning of the approach of this train. Defendant denied both alleged acts of negligence and set up contributory negligence on the part of the deceased. The cause was tried jointly with cause No. 7870, *post*, p. 455 [3 Pac. (2d) 25], so that both were left to the jury upon the same evidence and upon the same instructions. The evidence upon both issues was sharply conflicting. On behalf of plaintiff it was shown that deceased had crossed at that point frequently and was accustomed to watch the flagman for his usual signal of danger, but, that, at this time, the flagman was standing some ten or fifteen feet from his usual position with his foot upon the running board of a truck which was stopped in the street and with his head inside the cab of the truck, where he was in conversation with the truck driver. On the part of the defendant evidence was offered to show that the flagman was in his accustomed place giving the usual warning of the approaching danger and that the deceased disregarded these signals of danger and drove directly in the path of the approaching train.

Manifestly if the evidence of the plaintiffs was believed they made a case for the relaxation of the "stop, look and listen" rule to the extent that the failure to stop, look and listen is not in such cases negligence as matter of law. Under such circumstances "The extent to which a traveler may rely upon the assurance of safety arising from the absence of a flagman from his post of duty on the presumption that it is safe for him to cross a railroad track which he is familiar with is generally held to be a question of fact for the jury." (*Gregg* v. *Western Pac. R. R. Co.*, 193 Cal. 212, 224 [223 Pac. 553, 558].) In another portion of the opinion the Supreme Court in the Gregg case say (p. 222) : "But it is also true that a railway company will not be permitted to encourage the public to relax its vigil as to the dangers that lurk in railroad crossings by assurances that the danger has been removed or minimized by the adoption of safety devices and measures and at the same time hold a person to the same *quantum* of care as if no such safety measures had been provided." And at page

224 the court quoted with approval from *Elias* v. *Lehigh Valley R. Co.*, 226 N. Y. 154 [123 N. E. 73], as follows: "The danger is obvious. It is like in kind to that caused by raised and untended gates. To some extent it is an assurance that the way is safe. That the railroads recognize the danger is seen by the familiar sign at country crossings giving notice that the flagman is absent after 6 p. m." To the same effect are *Wyseur* v. *Davis, etc.*, 58 Cal. App. 598, 601, 602 [209 Pac. 213], where many authorities are cited, and *Sheets* v. *Southern Pac. Co.*, 212 Cal. 509 [299 Pac. 71].

██ With these qualifications of the "stop, look and listen rule" in mind we may approach the consideration of the instructions of which the appellant complains. At the request of respondent the jury was instructed: "If you believe from the evidence that there was a place of safety at which the automobile could have stopped, and from which the driver of the automobile could have seen Train No. 7 approaching from the north and traveling southerly, and that solely because of the neglect of the driver the said automobile was not stopped in such place, then I instruct you that your verdict must be for the defendant." "If you believe from the evidence that the automobile was driven to and upon the crossing while the view of the occupants thereof was obscured by Train No. 48 traveling northerly so that they could not see the approach of Train No. 7 traveling southerly on the further tracks, your verdict must be for the defendant."

The appellant criticises these instructions on the ground that they are "formula" instructions which fail to take into consideration her claim that the flagman was not performing his duty. The respondent defends them upon the ground that they present its theory of the case that the flagman fully performed his duty. The performance or non-performance on the part of the flagman was a question of fact for the jury. To instruct the jury that they *must* find for the defendant if they found that the driver had failed to stop at a place of safety where he could have ascertained whether another train was approaching from the north was tantamount to directing a verdict for the defendant notwithstanding the question of the acts of the flagman. It being conceded that the driver had stopped

before approaching the first tracks of the crossing in order to let train No. 48 pass, this instruction further required him to ascertain as a matter of *certainty* that the crossing could be made in safety irrespective of the presence or non-presence of the flagman. There was nothing in this case which required this driver to exercise a greater *quantum* of care than that required of the reasonably prudent person under similar circumstances. But the jury was not permitted to determine that such reasonable care was exercised, but was told that the driver was negligent if he failed to stop at a time and at a place where and when he could be *sure* that the crossing could be made in safety. ■ The rule is settled that when an instruction directs a verdict for one of the parties, if the jury finds certain facts to be true, it must embrace all things necessary to show the legal liability of the other and to warrant the direction that such party is entitled to a verdict. (*Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176, 184 [118 Pac. 700]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 278 [201 Pac. 599]; *Robinet* v. *Hawks*, 200 Cal. 265, 272 [252 Pac. 1045]; *Sinan* v. *Atchison etc. Ry. Co.*, 103 Cal. App. 703, 716 [284 Pac. 1041]; *Hodge* v. *Weinstock, Lubin & Co.*, 109 Cal. App. 393 [293 Pac. 80].) The error noted in the foregoing instructions is emphasized by the part beginning on line 16, page 734, of the typewritten transcript wherein the jury was instructed that it was the "duty" of the driver when he started to cross the tracks to look for an approaching train "from a point where looking would be effective, before crossing *any* railroad track on which a train might be approaching from either direction". Thus, the jury was told that, notwithstanding the presence of the flagman, it was the duty of the driver to stop at each track of the crossing and ascertain if a train was approaching.

■ The suggestion is made, though not seriously argued, that the error of these instructions was cured by the instructions given at the request of the appellant to the effect that where the railroad company maintains a flagman or other signals of warning the public has a right to assume that such safeguards will be reasonably maintained and that if the flagman is absent from his post of duty or fails to give the usual warning of danger this is an assurance of safety upon which a driver may rely provided that he uses

such precaution as a prudent person would use under like circumstances. In the same connection it is suggested that the instructions objected to were cured by the one given at the request of the appellant to the effect that "There is no positive rule of law requiring the said decedent or the said plaintiff to again stop, look or listen at any particular place upon the said crossing." These instructions, however, do nothing more than create a conflict and it is impossible to say which instruction the jury followed in arriving at its verdict. This being so, they cannot cure the error complained of. (*Keena* v. *United Railroads*, 57 Cal. App. 124, 127 [207 Pac. 35]; *Rathbun* v. *White*, 157 Cal. 248, 253 [107 Pac. 309]; *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, 394 [264 Pac. 237], where numerous authorities are cited.)

■ The appellant further complains of the refusal of the trial court to give her proposed instruction reading as follows: "A person crossing a railroad track guarded by safety devices, or flagman, is not required to exercise the same *quantum* of care which would be required of him if he were crossing an unguarded track, but in the case of a guarded crossing the traveler is required to exercise only ordinary care for his own safety. The railroad company will not be permitted to encourage the public to relax its vigilance as to the dangers that lurk in railroad crossings by assurances that the danger has been removed or minimized by the adoption of safety devices or other measures, such as a flagman, and at the same time hold a person to the same *quantum* of care as if no safety measures had been provided." The proposed instruction correctly states the law (*Gregg* v. *Western Pac. R. R. Co.*, 193 Cal. 212, 222 [223 Pac. 553]), and should have been given. As to the other proposed instruction which the trial judge refused to give, we are satisfied that the subject matter was fully covered by the instructions which were given.

Complaint is also made of the reading in evidence of the testimony of the witness Edward Aurswald, who was the flagman on duty at the time of the accident and who testified at the first trial of these actions. Judgment here on appeal comes from the fourth trial. In the second trial the testimony of this witness was read under stipulation of the parties. Following the second trial counsel for the plaintiff secured information which they believed would

impeach the testimony of this witness. He was not produced at the third trial and his testimony was not read. Before the fourth trial appellant's counsel offered to permit the reading of the testimony if certain facts which might be shown on cross-examination would be stipulated to. This offer was not accepted and some suggestion was made that the deposition of the witness be taken which it is agreed might have been done. During the course of the trial respondent offered to read the testimony given on the first trial and presented to the court a letter from the witness to the effect that he was ill and unable to appear and testify. Over the objection of the appellant this letter was received in evidence and the testimony read. On this appeal respondent defends its action on its interpretation of section 1870 of the Code of Civil Procedure, which permits the reading of the testimony of a witness in a former trial if "deceased, or out of the jurisdiction, or *unable to testify*". The appellant insists that the meaning of this expression is not limited to the inability of the witness to testify in the courtroom, but if, as it is admitted here, the deposition of the witness might have been taken then that course should be followed and his former testimony should not be read. No authorities are cited directly to the point though *Butcher* v. *Vaca Valley R. R. Co.*, 56 Cal. 598, is authority for the point that the expression "out of the jurisdiction" used in this section does not permit the reading of the testimony of the witness at a former trial who resides out of the county and more than thirty miles from the place of trial if her deposition could be taken. *Rose* v. *Southern Trust Co.*, 178 Cal. 580 [174 Pac. 28], cited by respondent, is not in point. There the Supreme Court was considering the inhibitions upon the competency of witnesses under subdivision 3 of section 1880 of the Code of Civil Procedure. The argument was made that under subdivision 8 of section 1870 testimony of a witness "unable to testify" might be read notwithstanding that such witness was incompetent to testify under the provisions of subdivision 3 of section 1880. The court very properly ruled that the words "unable to testify" related to the physical inability and not to the legal incompetency of the witness. In stating this proposition the court used the expression "physical inability to appear upon the witness stand and there to give testimony".

The last portion of the sentence was wholly unnecessary to the opinion as the question whether the language of section 1870 related to appearance upon the witness-stand or appearance for the taking of a deposition was not before the court. It is not incumbent upon us to decide the question here as the cause must be reversed for a new trial, and as it is agreed that the testimony of this witness can be taken by deposition, there is no reason for the controversy to arise again.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 1, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1931.