EDWARD ELIAS, Appellant, v. LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Railroads — negligence — question whether person struck by train at railroad crossing exercised sufficient care in listening and looking for a train — when such question for the jury, not question of law for court — maintenance of flagman at crossing — failure of flagman to notify person crossing tracks.

1. Where, although not required so to do, a railroad company has stationed flagmen at a crossing, that fact, as to one who knows it and has come to rely upon it, may be considered by a jury in deciding whether under all the circumstances he has used reasonable care for his own protection. The absence of a flagman may well affect the vigilance a jury would otherwise have required of an approaching traveler.

2. Where plaintiff, who was struck by a train of the defendant at a railroad crossing, at which a flagman was kept, listened and looked in both directions as he approached the crossing, but saw nothing, and then started across the tracks, without any warning from the flagman, who appeared to be in his shanty, and while looking toward the west was struck by a light engine running from the east at high speed, it was error under the circumstances for the Appellate Division in reversing the judgment for plaintiff to hold that he was guilty of contributory negligence as a matter of law. He did listen; he did look, and the question whether he should have looked once more was for the jury. The unexplained failure of the flagman to give warning to the plaintiff was also an element to be considered in determining the negligence of the defendant. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 468, distinguished.)

*Elias* v. *Lehigh Valley R. R. Co.*, 174 App. Div. 923, reversed.

(Argued March 6, 1919; decided April 8, 1919.)

APPEAL from a judgment entered July 19, 1916, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George S. Van Schaick* for appellant.  The question of contributory negligence was one of fact for the jury. (*Massoth* v. *D. & H. R. R. Co.*, 64 N. Y. 524; *G. T. Ry. Co.* v. *Ives*, 144 U. S. 408; *Carr* v. *Penn. R. R. Co.*, 225 N. Y. 44; *Palmer* v. *N. Y. C. R. R. Co.*, 112 N. Y. 234; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 9; *Stackus* v. *N. Y. C. R. R. Co.*, 79 N. Y. 464; *Glushing* v. *Sharp*, 96 N. Y. 676; *Wilbur* v. *N. Y. C. & H. R. R. R. Co.*, 8 App. Div. 138; *Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419; *Oldenburg* v. *New York Central R. R. Co.*, 124 N. Y. 414; *Rodrian* v. *New York, New Haven & Hartford R. R. Co.*, 125 N. Y. 526; *McNamara* v. *New York Central R. R. Co.*, 136 N. Y. 650.)  The character of the negligence of defendant has a direct bearing upon the question of plaintiff's contributory negligence.  (*Newson* v. *N. Y. Central R. R. Co.*, 29 N. Y. 383; *Carr* v. *Penn. R. R. Co.*, 225 N. Y. 44.)

*Clarence P. Moser* for respondent.  The p'aintiff was guilty of contributory negligence as matter of law and the complaint was properly dismissed by the Appellate Division.  (*Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Gorton* v. *Erie Ry. Co.*, 45 N. Y. 660; *Swart* v. *N. Y. C. & H. R. R. R. Co.*, 81 App. Div. 402; 177 N. Y. 529; *Avery* v. *N. Y., O. & W. Ry. Co.*, 205 N. Y. 502; *Spencer* v. *N. Y. C. & H. R. R. R. Co.*, 123 App. Div. 789; 197 N. Y. 507; *Hagglung* v. *Erie R. R. Co.*, 210 N. Y. 46; *Cullen* v. *D. & H. Canal Co.*, 113 N. Y. 667.)  A traveler upon a highway is not to the slightest extent relieved from the obligation of vigilance by the entire absence of a flagman. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 468; *Avery* v. *N. Y., O. & W. Ry. Co.*, 205 N. Y. 502; *White* v. *C. & N. W. R. Co.*, 102 Wis. 489.)

ANDREWS, J.  About noon on January 22, 1914, the plaintiff was driving two horses attached to an empty bobsleigh north on a highway in the town of Rush,

Monroe county, which is crossed by the defendant's tracks at a slight angle. As he approached, his view towards the west was cut off by buildings until he substantially reached the railroad right of way. Toward the east there was less difficulty. Five hundred feet from the intersection he could see along the tracks to a point beyond a local passenger station some seven hundred feet distant. Again when eighty or ninety feet from the rails, he could see in the same direction some three hundred and fifty feet and this distance rapidly extends as the tracks are neared. At this crossing for years the defendant had stationed a flagman. His shanty was north of the tracks and west of the highway. The plaintiff lived nearby and was familiar with the situation. He knew of the flagman. Indeed that very day as he drove back and forth, he had seen him performing his duties.

Under these circumstances what did he do? At the five-hundred-foot point he looked to the east and saw nothing. He then drove on slowly, listening. The day was bright and clear and he might hope to hear the noise of an approaching train. He looked again at the eighty-foot point and again heard and saw nothing. No sign came from the flagman although the door and a window of his shanty faced the east and he apparently had an unobstructed view in that direction. The plaintiff may have naturally assumed, also, that at least many of the trains from the east would stop at the station. Reasonably he feared greater danger from the west. From that direction all trains would come at speed. In that direction, too, the flagman's view was interrupted by a cut. The plaintiff himself could see nothing until close to the rails. He was not walking, but had his horses to control. Not unnaturally his attention was directed to that side and to the flagman's shanty. He did not look again to the east until he was on the tracks a moment before the accident. He was struck by a light engine, used for the inspection of the road, coming from the east at

.forty-five miles an hour.  It made, we may fairly assume, less noise than an ordinary train.  We may also assume it did not run on any schedule time.  Certainly it did not. stop at the station.  The flagman gave no warning although he seems to have been in his shanty.

Under these circumstances it was error for the Appellate Division to hold that the plaintiff was guilty of contributory negligence as a matter of law.  He did listen. He did look, although not perhaps at the precise point where later cool investigation shows looking would have been most effective.  In the situation presented to us, it was. for the jury to say whether he should have looked once more.

In reaching this conclusion we lay some stress upon the absence of the flagman — not that this absence would entitle the plaintiff to discard all caution, but as bearing upon the question as to whether the caution he did use was adequate.  This, it is said, we may not do.  We think it, however, an element entitled to consideration.  It is doubtful whether *McGrath* v. *N. Y. C. & H. R. R. R. Co.* (59 N. Y. 468) was ever intended to have as broad an application as is now claimed for it by the respondent.  (*Wilbur* v. *Del., L. & W. R. R. Co.,* 85 Hun, 158.)  Had it, however, it would now be overruled by later decisions of this court.  (*McGrath* v. *N. Y. C. & H. R. R. R. Co.,* 63 N. Y. 522; *Dolan* v. *D. & H. C. Co.,* 71 N. Y. 285; *Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.,* 82 N. Y. 424, 428; *McNamara* v. *N. Y. C. & H. R. R. R. Co.,* 136 N. Y. 650; *Avery* v. *N. Y., O. & W. R. Co.,* 205 N. Y. 502, 506.)  Where, although not required so to do, a railroad has stationed flagmen at a crossing, that fact, as to one who knows it and has come to rely upon it, may be considered by a jury in deciding whether under all the circumstances he has used reasonable care for his own protection.  The absence of such a flagman may well affect the vigilance they would otherwise have required of an approaching traveler.

As to the defendant's negligence, it is true that no flagman need have been stationed at this point. Having voluntarily placed one there the defendant could later withdraw him. Its duty was done if it gave reasonable warning of the passing of its trains — and often the bell and the whistle would as a matter of law be sufficient. Not always, however. Where the practice of guarding the crossing was not abandoned; where it was neglected by him whose duty it was to warn travelers, his unexplained failure might be found to be negligent towards those who knew of his habitual presence and had become accustomed to his warnings. The danger is obvious. It is like in kind to that caused by raised and untended gates. To some extent it is an assurance that the way is safe. That the railroads recognize the danger is seen by the familiar sign at country crossings giving notice that the flagman is absent after 6 P. M.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs to the appellant in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND and CRANE, JJ., concur; COLLIN and CUDDEBACK, JJ., dissent.

Judgment reversed, etc.