GAETANO BRINDIZI, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY and Another, Appellants.

Fourth Department, March 10, 1926.

**Railroads — crossing accidents — action to recover for injuries suffered by plaintiff when he was struck by train of one of defendants at crossing in city of Niagara Falls on railroad of other defendant — evidence shows that one of two wig-wag signals and one of two crossing bell signals were working — plaintiff was guilty of contributory negligence in starting to cross tracks while signals showed approaching train — defendant railroad which owned track is not guilty of negligence in that one of two signals was not operating — evidence is sufficient to warrant finding of negligence by defendant railroad operating train.**

In an action to recover damages for injuries suffered by the plaintiff when he was struck by a railroad train that was being operated by one of defendants over the tracks of the other, in the city of Niagara Falls, in which it appears that the plaintiff stopped his automobile near the crossing while a train was passing over the crossing and that immediately after the train passed the crossing he proceeded to cross, when he was struck by another train proceeding in the opposite direction, a finding by the jury that a wig-wag signal and a warning bell were not working at the time the plaintiff attempted to cross the track is contrary to the evidence in the case which clearly shows that one of the two wig-wag signals was in operation and that one of the crossing bells was ringing when the plaintiff attempted to cross the track.

Under the circumstances, therefore, the plaintiff was guilty of contributory negligence in starting to cross the tracks at a time when the warning signals indicated that a train was approaching the crossing.

The defendant railroad which owned the track is not guilty of negligence in that one of the two wig-wag signals and bells was not operating, since it appears that the other signal was in operation and was signaling at the time the plaintiff attempted to cross the track.

The evidence is sufficient to warrant a finding of negligence on the part of the defendant operating the train in question, based on the absence of adequate warning of the approach of the train to the crossing, and also on the fact that the train was being operated at a speed beyond that permitted by a city ordinance.

DAVIS, J., dissents, with opinion.

APPEAL by the defendants, Lehigh Valley Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 9th day of January, 1924, upon the verdict of a jury for $7,000, and also from an order entered in said clerk's office on the same day, denying defendants' motion for a new trial made upon the minutes.

*Howard R. Sturtevant* and *Raymond C. Vaughan,* for the appellant New York Central Railroad Company.

*Thomas R. Wheeler,* for the appellant Lehigh Valley Railroad Company.

*Francis T. Findlay,* for the respondent.

SEARS, J.  Plaintiff suffered personal injuries and his motor car was wrecked when a train of the Lehigh Valley Railroad Company, running on the tracks of the New York Central Railroad Company on the night of the 18th day of May, 1923, came into collision with plaintiff's motor car at the Sugar street crossing of the New York Central Railroad Company's tracks in the city of Niagara Falls.  At this point the New York Central Railroad Company has two tracks which run substantially east and west and are straight for a long distance in each direction.  Sugar street runs northerly and southerly, but not exactly at right angles to the tracks.  At a distance of about four hundred and fifty feet easterly from Sugar street is the New York Central Echota station. Buffalo avenue is located southerly from the New York Central right of way, and runs easterly and westerly parallel with the railroad tracks.  From the northerly curb line of Buffalo avenue to the southerly rail of the southerly track is thirty feet and four inches measured at right angles to the tracks.  The distance is somewhat greater measured along the center line of Sugar street. On the northwest corner of Buffalo avenue and Sugar street there stands a small building used as a store.  The southerly side of this building is at the curb of Buffalo avenue.  The width of this building in a northerly and southerly direction is twelve feet. One passing from Buffalo avenue northerly over Sugar street has his view of the tracks to the west obstructed by this building as he enters Sugar street, but from the northerly side of the building to the southerly rail of the southerly track is a distance of eighteen feet and four inches measured at right angles to the tracks, and while covering this distance the traveler on Sugar street has an unobstructed view of the railroad tracks to the west.  To the east the view of the tracks from Sugar street north of Buffalo avenue is clear, at least as far as the Echota station.

A year or more prior to this accident the New York Central Railroad Company had erected on the west side of Sugar street northerly of the tracks and on the east side of Sugar street southerly of the tracks what are known as " wig-wag " signals.  These signals operating automatically give warning of the approach and passage of trains by means of a disc, furnished with a red light at night, raised sixteen or eighteen feet above the level of the rails, swinging to and fro in a direction at right angles to the highway, The installation of these signals was such that the discs would

Fourth Department, March, 1926.     [Vol. 216

swing on both towers upon the approach of a train from either direction. The discs would begin to swing when a train reached a point about three thousand feet distant from the crossing and would continue in motion until the rear of the train entirely cleared the crossing. Two months previous to the happening of the accident in question, however, the wig-wag signal on the easterly side of Sugar street, southerly of the tracks, had been demolished in another accident, and it was not until the very day of plaintiff's accident that the tower and signal had been re-erected, and as matter of fact, the installation had not been completed at the time of plaintiff's accident so that the wig-wag signal on the southerly side of the tracks was consequently not functioning on the night in question. The New York Central Railroad Company also maintained a bell or bells at this crossing as a further warning to travelers on Sugar street of danger from passing trains. There is dispute in the evidence as to the number and location of such bells. It seems to be the claim of plaintiff that each of the wig-wag signals was originally furnished with a bell, and that after the demolition of the wig-wag signal on the east side of Sugar street southerly of the railroad tracks, a crossing bell was installed on a diamond crossing sign which stood near the site of the demolished wig-wag signal. The installation of such a bell on this diamond crossing sign is also in accord with the New York Central Railroad Company's proof. That railroad, however, asserted that there was no bell on the northerly side of its tracks at or near the wig-wag signal, and that up to the time of the accident there never had been such a bell in operation on the northerly side of the tracks. The plaintiff's proof, however, tends to establish that there was also a signal crossing bell on the wig-wag signal on the northerly side of the tracks.

The plaintiff at the time of the accident was employed as head-furnaceman at a factory located north of the railroad and east of Sugar street. He had been employed there thirteen years. He was thoroughly familiar with this crossing, and for at least a year had passed over it daily in going to and coming from his work. Sometimes he crossed by day, at other times at night, depending on the shift upon which he was working.

At a time between ten and eleven o'clock on the night in question, the plaintiff was driving his automobile to go to his place of work. He proceeded easterly on Buffalo avenue to Sugar street, and turned northerly into Sugar street. As he reached this corner he saw a west-bound train on the New York Central tracks just leaving the Echota station. After making the turn into Sugar street, he stopped his car to let this west-bound train pass. His

car was then facing northerly toward the tracks, and was about twenty-five feet from the nearest rail. From this position his view of the tracks to the west was almost completely obstructed by the store on the northwest corner of Buffalo avenue and Sugar street. His car was equipped with a self-starter and while he was waiting he stopped the engine. The west-bound train passed over the crossing and the rear end had proceeded beyond the crossing for some distance westerly, vaguely described by the plaintiff as about two blocks, when the plaintiff started his engine and started his car and proceeded with his gears in low speed to make the crossing. Sugar street has a rising grade to the north of twenty and one-half inches between Buffalo avenue and the southerly rail of the southerly track. The plaintiff had his car well under control. The wig-wag signal on the northerly side of the tracks was almost directly in front of him distant about fifty-five feet; the newly re-erected and incompleted one on the southerly side was not so directly in front of him, but somewhat to his right and about twenty-five feet from him. He says that he looked at the wig-wag signal on the southerly side of the track. As to his looking at the wig-wag signal on the northerly side of the track, his testimony is not altogether clear, but there are statements which warrant the interpretation that he looked at that signal also, and that the disc there was also not in motion. He listened for a crossing bell, but says no bell was ringing; he looked in both directions for trains, to the west after passing beyond the obstruction of the building, but toward the west, on account of the smoke of the passing train, smoke from factories which was blown over in that direction, and because of a foggy condition of the atmosphere, he did not see along the track a distance greater than one hundred feet and he saw no train, and heard no whistle. It was not until he was almost upon the first rail of the nearer track that the headlight of a train coming from the west shone upon him. There were then two short blasts of the whistle and he was almost immediately struck, receiving the injuries for which he has received a verdict.

There is evidence in the case corroborating the plaintiff as to the absence of the crossing whistle from the Lehigh Valley train, and as to the presence of smoke and fogginess. His testimony that no crossing bell was ringing, and that the disc on the northerly side of the tracks was not swinging (assuming that to be his statement) was not only wholly uncorroborated, but convincingly outweighed by evidence to the contrary. Two other persons who were waiting for the passing of the west-bound train so that they might cross the tracks were sworn as witnesses on behalf of the

plaintiff. One of these was driving northerly and brought his automobile to a stop by the side of or just behind the plaintiff's car. The other was driving southerly and stopped on the northerly side of the tracks. The first mentioned of these two witnesses saw the disc on the northerly signal swinging as soon as the west-bound train cleared the crossing. Up to that time his view of the signal had been obstructed, as presumably the plaintiff's view had been similarly by the west-bound train. The other of these two witnesses observed the swinging disc on the tower northerly of the tracks while the west-bound train was passing and observed it continue in motion after that train had passed. It is significant that although both of these men started their cars when the west-bound train cleared the crossing, both of them stopped again at once on observing the signal in motion, and made no attempt to get across. Every witness who was questioned on the subject of the operation of this swinging disc on the night of the collision, except the plaintiff, testified affirmatively to the operation of this signal. As to the sounding of a bell, every witness sworn either by the plaintiff or defendants who was interrogated on the subject of crossing bells, stated that on the night in question a crossing bell was ringing at the crossing. Different witnesses had their attention drawn to this matter at different times and had different opportunities for observation. They were not all in agreement as to the location of the bell which was ringing, but, as to the material fact of the ringing of the crossing signal bell on the night of the accident, they are in complete accord. In view of this unanimity of testimony, a finding that a crossing bell was not sounded, or that the northerly wig-wag signal was not in motion when plaintiff started to pass over the railroad tracks is contrary to the weight of the evidence.

Viewed in the light of the convincing weight of evidence, there was no such absence of warning at the crossing as to lull the plaintiff into a sense of security. Reliance on lack of customary warning in a proper case will justify some relaxation of vigilance in making observations which would otherwise be obligatory. (*Elias* v. *Lehigh Valley R. R. Co.*, 226 N. Y. 154; *Brender* v. *N. Y., O. & W. R. Co.*, 188 App. Div. 314.) But here there was positive warning, as stated above, a red-lighted disc was swinging almost directly in front of the plaintiff within a distance of fifty-five feet, and a crossing bell was ringing. He listened for a bell. The red-lighted swinging disc on the northerly signal tower was a significant warning which an ordinarily prudent man ought to have observed. In view of it being seen by others, we cannot believe it was seriously obscured by fog or smoke, nor does the

plaintiff make such claim. There were other railroads to the north but there is no claim that the plaintiff was giving them any consideration, or that their presence had any influence on the plaintiff's actions. Under the circumstances a finding of freedom from contributory negligence on his part is contrary to the weight of the evidence.

The finding of negligence contributing to the accident on the part of the New York Central Railroad Company is also against the weight of the evidence. When this defendant installed its system of disc and bell signals, it did so voluntarily. No statute, ordinance or order of the public authorities required such installation. But, having undertaken the practice of operating such warning it can be held to the exercise of care in such practice toward one knowing of such practice and relying on it. Toward such a one, carelessness in this respect involves responsibility for damages resulting therefrom. (*Elias* v. *Lehigh Valley R. R. Co.*, *supra; McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 468; *Kissenger* v. *N. Y. & H. R. R. Co.*, 56 id. 538, 543.) To be sure no disc signal was in motion on the southerly side of the railroad and the jury may have found that only one of two crossing bells installed at this crossing was ringing. Still the bell which was ringing was certainly audible to the plaintiff, as it was to the other witnesses, and the disc on the northerly side of the tracks was swinging and announcing its warning to him as it did to the other travelers on the street. Under such circumstances, not assurance of safety by absence of customary signals, but inattention is shown by the great weight of the evidence to have been the reason for the plaintiff proceeding in his attempt to cross.

The evidence is sufficient to warrant a finding of negligence as to the Lehigh Valley Railroad Company based on the absence of adequate warning, and operation at a speed beyond that permitted by the city ordinance.

The judgment and order should be reversed on the facts and a new trial granted, with costs to the appellants to abide the event.

HUBBS, P. J., CLARK and CROUCH, JJ., concur; DAVIS, J., dissents in an opinion and votes for affirmance.

DAVIS, J. (dissenting). As I read the opinion of my brother SEARS, reversal is based on the ground that the weight of evidence indicates that plaintiff was guilty of contributory negligence in not observing the warning signals on the northerly or far side of the tracks some fifty or sixty feet away.

The hour was about eleven P. M. Visibility was low because

2

of the darkness, fog and the heavy smoke. We may assume from the verdict that the signals on the southerly side of the track and near to plaintiff, particularly intended as a warning to those approaching from that side, were motionless and silent. He may not have seen or heard the northerly signals in the condition of smoke and the noise of the passing Central train, or his vision may have been so imperfect that in his position he may have thought the " wig-wag " stationary, though others nearby could see it swinging. He says he did not see it.

Plaintiff says that being familiar with the crossing and with the wig-wag signals, and noting that the one on his side of the track was still, and the gong there not ringing, he looked in both directions and proceeded on his way. If he had once looked properly he is not guilty of contributory negligence if he failed to look again or in any particular place. (*Carr* v. *Pennsylvania R. R. Co.*, 225 N. Y. 44.) His alertness and vigilance must depend upon the conditions present. As we have said in another case: " This rule of due care is often determined in particular cases by the dangers that exist and the opportunities afforded him, not only by physical conditions present, but by his reliance on timely warnings he has a right to expect." (*Salt City Express & T. Co.* v. *New York Central R. R. Co.*, 213 App. Div. 371, 373.) The warnings he had a right to expect were those on his side of the track, close at hand, and signals from the approaching train. These were not given.

Just beyond the New York Central tracks were the single track of the Erie railroad and the double " high speed " tracks of the International Railway. These also he was about to cross. His duty of vigilance was not limited to any particular signal but he was required to be alert to all possible dangers as he proceeded, and give attention to observe whether trains were approaching on other tracks.

Here we do not say there was contributory negligence as a matter of law. It was admittedly a question of fact for the jury to determine under the facts as stated in the prevailing opinion and the additional facts I have mentioned. I do not regard the verdict on the question of contributory negligence as against the weight of evidence, and, therefore, vote to affirm.

Judgment and order reversed on the facts and new trial granted, with costs to appellants to abide the event.