Alvin L. Nixdorf, Respondent, v. New York State Railways, Appellant.

Third Department, July 1, 1927.

**Railroads — crossing accident — action for injuries suffered by plaintiff when his truck was struck by electric car at crossing — verdict in favor of plaintiff is against evidence.**

This is an action to recover for injuries suffered by the plaintiff when his automobile truck was struck by one of defendant's electric cars at a railroad crossing. The verdict in favor of the plaintiff is against the evidence, since it appears that he left the railroad station near the point of the accident, traveled a short distance and turned onto the main highway at a point very close to the track; that he merely glanced over his right shoulder at a place where he could not see down the track very far and did not again look in the direction from which the car was approaching; that if he had looked later he would have seen the approaching car and would have been able to stop his truck; that his view of the track in the direction from which the car was approaching was unobstructed for a mile at a point approximately twenty-three feet from the first rail; and that he was traveling at a rate of six or seven miles per hour.

Testimony to the effect that no signal was given was entirely overcome by testimony of disinterested witnesses on the part of the defendant to the effect that a signal was given by the approaching car.

Appeal by the defendant, New York State Railways, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Madison on the 28th day of May, 1926, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 24th day of September, 1926, denying defendant's motion for a new trial made upon the minutes.

*Kernan & Kernan* [*Edward J. Burns, Jr.,* of counsel], for the appellant.

*William E. Lounsbury* [*Edward A. Kiley* of counsel], for the respondent.

HINMAN, J.   The plaintiff was struck by an interurban trolley car of the defendant while driving his empty Ford truck across defendant's tracks at Chittenango station.   The tracks run east and west and are double tracks.   They are crossed by an improved highway at right angles.   The macadam portion of the highway is sixteen feet wide.   North of the tracks and running westerly from this improved highway was a dirt driveway which ran to a freight station.   The southerly edge of this driveway was about forty-seven feet from the nearest rail.   The plaintiff was a man about sixty-two years of age who was a foreman or superintendent of road construction for the State who lived at Oneida, and early that day he had left Oneida to go to Chittenango station to overlook the unloading of some road materials at that station.   He arrived in the early afternoon of November thirtieth and had crossed these railway tracks from the south upon this improved highway.   Then he turned left upon this dirt driveway and drove to the freight station where he supervised the unloading.   The accident happened to him upon his return over the same course. He was driving seven or eight miles an hour along this dirt driveway and just before he made the turn to the right upon the improved highway he glanced over his right shoulder, he says, to see if a trolley was coming from his rear.   He says he could only see about fifty feet of track at that time.   The car which struck him came from that direction.   He made the turn without looking again and proceeded along the improved highway at the rate of six or seven miles an hour.   His view to the east along these tracks, that is, to his left as he approached the tracks was wholly unobscured. There were, however, to the west of the improved highway and along the north side of the tracks several small buildings which at all times partially obstructed his view in that direction and shortly after he made the turn these buildings totally obscured his view. The building nearest to the improved highway was a tower building which was twelve feet along the highway and twenty-three feet along the tracks.   The edge of this tower building was twenty-seven or twenty-eight feet from the edge of the macadam and it was located ten feet back from the nearest rail.   The east and west-bound tracks were thirteen feet apart from center to center.   The trolley in question was proceeding on the farthermost tracks. Therefore, the edge of this tower building was twenty-three feet from the nearest rail of the tracks upon which this trolley was approaching.   The next building along these tracks to the west of this tower building was a little toolhouse which was much smaller. It was located perhaps fifty feet west of the tower building.   West of the toolhouse and about three hundred feet from the tower

11

Third Department, July, 1927.　　　[Vol. 221

building was a small passenger station. The plaintiff took a mere glance over his right shoulder just before he made the turn onto the improved highway and then saw only about fifty feet of the track. He says that as he was making that turn he listened and heard no warning signal. He does not say that he listened any time before or afterwards. He also says that as he was making the turn onto the improved highway he looked at two flicker lights which were set upon a pole which was twelve feet from the nearest track and about two feet from the right edge of the macadam. He says that the lights were not flashing. These lights had been installed within the previous year. The only other time that he had visited this place, so far as his testimony shows, was sometime in the previous August. He had noticed the lights when he had driven to Chittenango station that afternoon and they were not flashing at that time. There is no indication in the testimony that he knew what these lights were for, or how they operated or that he placed any reliance upon these lights as warning signals or that he could be presumed to have placed any reliance upon them. After making the turn he proceeded without diminishing his speed and when he arrived at a point where his view was unobstructed by the tower building which was near him on his right, he says he looked first to his left, although he had had an unobscured view along the tracks to the left at all times, and then he looked to the right. When he looked to the right he was almost on the tracks and then for the first time he saw this trolley car about one hundred feet away. He immediately shut off his motor and applied his brakes, but the front end of his truck was struck by the trolley car and he was severely injured.

The undisputed testimony is that the trolley car was proceeding about forty miles an hour and that he was proceeding six or seven miles an hour. Thus the trolley car was going about sixty feet a second, and he was traveling about ten feet a second. Since the tower building was twenty-eight feet away from the edge of the macadam and twenty-three feet away from the nearest rail of the tracks upon which the trolley car was approaching, it is obvious that he could see a considerable distance along the east-bound tracks long before he reached the inner edge of the building. According to the undisputed testimony when he reached the inner edge of the tower building (that is twenty-three feet from the first east-bound rail) he could see west for a mile; that when he reached that point if the trolley car was going forty miles an hour it was one hundred and forty feet away; that when he was twenty-five feet from the east-bound rail the trolley car was about one hundred and fifty feet away, and at the time the plaintiff could see four hundred and

eighty feet away; that at twenty-seven feet the trolley car was about one hundred and sixty-two feet away and the plaintiff could see about two hundred and sixty feet; that at twenty-nine feet the trolley car was about one hundred and seventy-five feet away and he could see about that distance. So that he could have seen the trolley car at all times after he was about twenty-eight feet from the nearest east-bound rail. At twenty-eight feet from that rail he was five feet back from the inner edge of the tower building, that is the edge nearest to the rail. Had he been looking to his right, the side where his view was obstructed, he would have had ample opportunity to have discovered this car in time to have avoided the accident. He must have been well onto the tracks before he looked to his right, because if he was traveling only six or seven miles an hour and his brakes were in good condition, as he says, he ought to have been able to stop his car within a very few feet.

The burden of proof was upon the plaintiff to prove his freedom from contributory negligence. The cases relied upon by the respondent (*Brender* v. *N. Y., O. & W. R. Co.,* 188 App. Div. 314; *Elias* v. *Lehigh Valley R. R. Co.,* 226 N. Y. 154; *McNamara* v. *N. Y. C. & H. R. R. R. Co.,* 136 id. 650) do not help the respondent very much. In all of those cases the company had stationed a flagman at the crossing, and in all of those cases it was shown that that fact was well known to the injured person and that he had come to rely upon it. Also two of those cases were death cases in which a different rule is involved. The *Elias* case was not a death case, but there the plaintiff lived near the crossing and was familiar with the situation. He had come to rely upon the presence of the flagman, and that very day he had seen him performing his duties. The finding of the jury in the instant case as to contributory negligence is against the weight of the evidence.

Moreover, the sole ground upon which the defendant could be held guilty of negligence on the record before us is the neglect of the motorman in the sounding of his whistle for this crossing. There is not the slightest proof that the flicker lights had been out of order prior to the accident to the knowledge, direct or constructive, of the defendant or its agents so as to charge the defendant with neglect to keep these lights in order. In fact the uncontradicted testimony is that the defendant had regularly inspected these lights; that they had been inspected by the official inspector two days before; and also that the local agents of the company had tested them that very morning and had found them to be in good working order. On the question whether the motorman did sound his whistle for this crossing, even the trial judge says that the weight of evidence was certainly in favor of the defendant. He simply

concludes that " there was not such an overwhelming preponderance of proof as to make it a matter of law that the signal was given." Even though it was not possible to say as a matter of law that the signal was given, it seems clear to me that he should have granted a new trial on the ground that the finding of the jury on this issue was against the great weight of the evidence. Twelve witnesses were sworn by the defendant who testified that the signal was given. Only two of these witnesses were employees of the defendant. Six of them were passengers and four of them were employees of the New York Central railroad. The testimony of disinterested witnesses fully supports the defendant on this issue. Against that testimony the plaintiff offered the testimony of four witnesses, including himself. His testimony was that he listened just before or just as he was turning from the dirt driveway onto the improved highway. It does not appear that he listened at any other time, and it also appears that he was slightly deaf. Two other witnesses were not listening and their testimony is purely negative. The only other witness for the plaintiff on that issue was a carpenter repairing a roof, tearing off roof boards and using his hammer, on a building which was fairly near the tracks and slightly west of the freight house. His testimony is not very weighty, however, for he says he " thinks " he saw the trolley car when it went past. He was not listening particularly for anything and he had signed a statement just a day or so after the accident which quoted him as saying that he could not say that the whistle was not blown. It was apparently his mere conclusion that if it had been blown he would have heard it. The weight of the evidence on this issue was certainly greatly in favor of the defendant.

The judgment and order should be reversed on the law and the facts and a new trial granted, with costs to the appellant to abide the event.

COCHRANE, P. J., McCANN, DAVIS and WHITMYER, JJ., concur.

Judgment and order reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.