JOHN TADDEO, Respondent, *v.* BENJAMIN E. TILTON, as Trustee of NEW YORK STATE RAILWAYS, Debtor, Appellant.

PALAZIA PACZKOWSKI, Respondent, *v.* BENJAMIN E. TILTON, as Trustee of NEW YORK STATE RAILWAYS, Debtor, Appellant.

MATHEW PACZKOWSKI, JR., by His Guardian ad Litem, PALAZIA PACZKOWSKI, Respondent, *v.* BENJAMIN E. TILTON, as Trustee of NEW YORK STATE RAILWAYS, Debtor, Appellant.

Fourth Department, June 30, 1936.

*George J. Nier*, for the appellant.

*Alfred J. D'Amanda*, for the respondent Taddeo.

*J. Frank Traynor*, for the respondents Paczkowski.

EDGCOMB, J. On the afternoon of Sunday, August 25, 1935, a collision occurred between a street car operated by the defendant and an automobile driven by Mathew Paczkowski at the corner of South avenue and Stewart street in the city of Rochester, N. Y. Palazia Paczkowski and Mathew Paczkowski, Jr., occupants of the automobile, and John Taddeo, a passenger in the street car, have been awarded damages for injuries which they received as the result of this accident. Defendant appeals.

South avenue runs in a northerly and southerly direction, and is intersected from the west by Stewart street. Defendant's tracks are laid in the center of Stewart street, and turn northerly into South avenue, where, instead of running in the center of the paved portion of the highway, they are laid between the curb and the sidewalk, the south-bound track on the westerly side of the avenue, and the north-bound track on the easterly side. This construction requires north-bound cars to cross the entire paved portion of South avenue at the intersection of the two streets.

The street car involved in this accident was turning northerly into South avenue; the front fender had reached the easterly curb of the street, and the body of the car was blocking practically the entire width of the avenue, when Paczkowski ran into it, striking the side approximately three feet back of the motorman's cab. South avenue to the north was straight, and there was a clear view of the street intersection for a distance of at least 1,500 feet.

There was a dispute in the evidence as to whether the street car came to a stop in Stewart street just before it turned into South avenue. Upon that phase of the case the trial court charged the jury as follows: " The contention of the defendant, the street car company, and of its motorman, is that they usually do make a full stop at all intersections like this, and therefore *I charge you that if the motorman did not stop before entering this intersection, he would be guilty of negligence.*" This was an erroneous instruction, and necessitates a reversal of the judgment appealed from.

South avenue is not a through boulevard, and there is no law, ordinance or regulation requiring vehicles entering that street from Stewart street to stop before doing so. Assuming that the defendant was in the habit of stopping its cars at intersections of this character before crossing or turning into another street, there is no evidence that the driver of the automobile or any of the plaintiffs were cognizant of such a custom. Paczkowski, the driver of the motor car, testified that he had never driven past this intersection before, and had never been there but on one previous occasion. Failure to comply with a practice which a party was under no obligation to follow or enforce, and which was unknown to and was not relied upon by another, does not constitute evidence of actionable negligence. (*Longacre* v. *Yonkers R. R. Co.*, 236 N. Y. 119; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 id. 468; *Fonda* v. *St. Paul City R. Co.*, 71 Minn. 438, 448; 74 N. W. 166.)

While the apparently broad doctrine laid down in the *McGrath* case has been somewhat limited (*Elias* v. *Lehigh Valley R. R. Co.*, 226 N. Y. 154; *Wilbur* v. *Delaware, L. & W. R. R. Co.*, 85 Hun, 155, 158), the limitation goes more to the question of the contributory negligence of a plaintiff, who has a right to rely to some extent on the continuance of a custom of which he is aware, than it does to the negligence of a defendant.

It is pointed out by Chief Judge Hiscock in *Longacre* v. *Yonkers R. R. Co.* (236 N. Y. 119, at p. 125) that if private rules, promulgated by an employer for the guidance of his employees, were competent evidence against the employer, the more cautious he might be, and the more carefully he regulated the conduct of his employees, even though he went far beyond that which the law required, the more subject he would be to liability, because some employee failed to obey the rule.

We think the rule applicable to the present case, where neither the plaintiffs nor the driver of the automobile were aware of the alleged custom to stop cars before they entered Stewart street, is well stated in *Fonda* v. *St. Paul City R. Co.* (71 Minn. 438, at p. 449; 74 N. W. 166), where it is said: " Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public. The latter, as far as they go, fix the standard of duty towards those whom they were intended to protect, and a violation of them is negligence in law or *per se*. But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the

law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party."

It is true that a failure to continue to follow a voluntary and continued practice which is notoriously public and is well known to an injured party may become an act of negligence for which the party failing to follow such custom would be liable (*Ernst* v. *Hudson River R. R. Co.*, 39 N. Y. 61), but that situation does not exist here.

Neither the plaintiffs nor the driver of the automobile were misled or lulled into a sense of security by relying upon a custom of which they had no notice.

Furthermore, the court charged the jury that if the motorman did not stop before entering this intersection *he would be guilty of negligence.* The failure to follow a self-made rule was thus placed upon the same plane as the neglect to obey a statute, and was made a more serious offense than the violation of an ordinance. Certainly that is not the law.

The appellant also excepts to another instruction of the trial court in which the jury were told that the defendant owed Taddeo, a passenger on the street car, the duty of carrying him to his destination safely in so far as that could be accomplished by the exercise of ordinary care, which under the circumstances meant a high degree of care; that the motorman was required to exercise a high degree of care to satisfy the requirement of ordinary care. While the court did not use the expression " highest care," the expression " a high degree of care " is practically synonymous to " highest care," and the jury must have so understood it.

The obligations of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest exists only with respect to those results which are naturally to be apprehended from unsafe roadbeds, defective machinery, imperfect cars, and other conditions endangering the success of the undertaking. In every case the degree of care to be exercised depends upon the circumstances. The strict rule would be proper in a case where the accident was the result of a situation from which grave danger might be expected, and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it. The rule of the highest degree of care is usually applied in cases where the accident results from defective roadbeds, machinery or cars, and rarely in cases where the result follows negligent operation by the motorman. (*Stierle* v. *Union R. Co.*, 156 N. Y. 70, 73, 684; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106

id. 678; *Palmer* v. *Pennsylvania Co.*, 111 id. 488; *Endres* v. *International R. Co.*, 129 App. Div. 785, 789; *Beltz* v. *Buffalo, R. & P. R. Co.*, 222 N. Y. 433, 436; *Kelly* v. *Manhattan R. Co.*, 112 id. 443, 450; *Ganguzza* v. *Anchor Line*, 97 App. Div. 352; *Palmer* v. *D. & H. C. Co.*, 120 N. Y. 170.) Under this rule the charge in question was error.

It is urged that there is no evidence in the record upon which a finding of negligence on the part of the defendant can properly be based. At best the case is very close on that proposition. We prefer not to pass upon that question at this time, but to leave it open to be decided upon the evidence which may be presented upon another trial, which we think should be had because of the erroneous instructions to the jury above pointed out.

The judgment in each case should be reversed, and a new trial granted, with costs to appellant to abide the event.

In Taddeo case: All concur, except CROSBY, J., who dissents as to the granting of a new trial only and votes for dismissal of the complaint. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

In first Paczkowski case: Same decision and like cause of action as in companion case of *Taddeo* v. *Tilton.* Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

In second Paczkowski case: Same decision and like cause of action as in companion case of *Taddeo* v. *Tilton.* Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.