PERRONE v. PENNSYLVANIA R. CO.

No. 311.

Circuit Court of Appeals, Second Circuit.

July 8, 1943.

Joseph A. McLaughlin, of New York City (Harry S. Austin, of New York City, and Vine H. Smith, of Brooklyn, N. Y., of counsel), for appellant.

Alfred W. Andrews, of New York City (William L. Shumate, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff was a plumber, employed by a subcontractor in installing waste pipes in defendant's railroad station. He received injuries on February 20, 1942, caused by coming in contact with a trolley wire charged with eleven thousand volts of electricity and located over track number 18 at the Pennsylvania Railroad Station, New York City. It appeared that he received an electric shock from contact with the wire while he was standing with one foot on a step-ladder and with the other foot on the roof of one of the cars of a Long Island train which had just pulled in on track 18 along the south side of platform No. 10. At the time, he was engaged in measuring the distance from a hole in the ceiling to the main drain pipe, which was located near the ceiling and directly over platform No. 10. The hole in the ceiling was about six inches beyond the charged wire. He testified that in taking the measurement he extended his arm out over the charged wire, but that he thought the current was off at the time.

The trial judge held that no question had been presented for the jury because the proof failed to show any negligence on the part of the railroad, but did show that the plaintiff was guilty of contributory negligence "as a matter of law." As a result, judgment was entered dismissing the complaint. We think there was evidence from which the jury might have found that the plaintiff was free from negligence and that his injuries were caused by the negligence of the defendant. There must accordingly be a reversal of the judgment and a new trial.

As in most negligence actions, many of the facts were in dispute. The plaintiff sought to establish freedom from contributory negligence by his own testimony that his foreman, Brunhuber, instructed him to do work which was near the wire and that he, therefore, "understood there was clearance on that wire." The plaintiff also testified that an employee of the defendant named Martin had charge of the wire and passed him while he was on the ladder. The foreman Brunhuber testified that for nine weeks previous to the accident the line had been de-energized from 9 A. M. to 4 P. M. Brennan, the plaintiff's helper, likewise said that the electric current had been off the wire for two or three weeks prior to the accident and during approximately the same hours of the day. He also confirmed plaintiff's statement that Martin had charge of clearances. Hallowell, an employee of the railroad, testified that the records of the defendant showed that the wire was de-energized during a number of hours on January 27, 28 and 30, and on February 9, 10, 11, 13, 16, 17, 18 and 20, most of these days at the request of Martin. We think it plain that there was evidence, though much of it was disputed by the defendant, from which a jury might infer that the plaintiff had reason to believe that the wire was de-energized when he began to work around it and that he was, therefore, not negligent in working there as he did.

The question remains whether there was proof of the defendant's negligence. The subcontract, as well as the contract with the main contractor under which the defendant was having the work done, contained specifications which included the following provisions: "(O) Protecting Railroad Operations.—All of the tracks in the vicinity of this work are electrified with both overhead trolley, 11,000 volts, and third rail, 650 volts. The work over and adjacent to the trolley will be permitted only during such hours as the wires may be de-energized. When other conditions are normal the con-

tractor may expect to have these de-energized between the hours of 9:30 A. M. and 4 P. M. daily if necessary in the opinion of the engineer."

The railroad had a book of instructions for its employees containing the following: "3. Persons other than railroad employees must not be permitted to work near overhead wires or apparatus except when protected by a Class A employee who will take the necessary precautions for their safety before starting and during the progress of the work."

Martin was a Class A employee and testified that if he saw any men working near the wires it was his duty to: "Pull them away from it."

The plaintiff, and his assistant Brennan, if believed, swore that Martin saw him working near the wire and yet neither had it de-energized nor warned him of the danger. There can be no doubt that a wire heavily charged with electricity was most dangerous; the specifications in the contracts for the protection of workmen, and the railroad's own regulation, clearly indicated that such was the opinion of all parties and the duties assigned to Martin afforded additional confirmation.

■ The defendant argues that its arrangement with the contractor was to have the wire de-energized when work was to be done near it and then only when requested by the contractor. But both the rule that persons should not be permitted to work near overhead wires except when protected by a Class A employee and the testimony of Martin that it was his duty to "pull them away" from the wires if he saw them working near them, and his neglect to warn the plaintiff or have the current turned off, would justify a jury in finding that the defendant was guilty of negligence. If plaintiff's evidence is believed, the defendant had given him reason to suppose that it had assigned Martin to look after the wire in order, among other things, to protect the workmen who were installing the plumbing. His neglect to give warning of any danger amounted to an assertion that the wire was clear. Elias v. Lehigh Valley R. R. Co., 226 N.Y. 154, 123 N.E. 73; Conowingo Power Co. v. Maryland, 4 Cir., 120 F.2d 870; Ashby v. Philadelphia Electric Co., 328 Pa. 474, 195 A. 887; Restatement Torts, § 303, § 325 and § 345.

The records of the railroad for February 20, 1942, indicated that the wire was de-energized at the precise moment when the accident is said to have happened. Whether this was the fact was a question for the jury, and, even if the current had just been disconnected, nevertheless Hallowell testified that a dangerous voltage would remain in the wire until it had been drained off by the use of ground sticks which it was the duty of Martin to install in order to complete the de-energizing process. There was no proof that Martin used ground sticks on that occasion after the current had been turned off at the power house.

■ For the foregoing reasons it seems plain that whether the wire was de-energized at the time of the accident or not (and Martin denied that it was) there was enough evidence to justify a jury in finding (a) that the defendant had led the plaintiff to believe, and the latter did believe, that the wire was clear, though it in fact was carrying a heavy charge of electricity; (b) that the plaintiff, under a mistake as to the condition of the wire but without any negligence on his part, came in contact with the wire and suffered damage from an electric shock accordingly.

■ It might or might not have been true that the defendant was obliged to furnish a man like Martin to see that the wires were de-energized when men were working near them, or to warn them against danger in cases where the current had not been turned off. But when such a man had once been supplied and plaintiff knew this, there can be no doubt that it was negligent for him to fail in his duty. Elias v. Lehigh Valley R. R. Co., 226 N.Y. 154, 123 N.E. 73. Defendant's counsel argues that it was unnecessary to have Martin available and that the railroad's rules we have quoted were unnecessary precautions which might have been abandoned at will. But warning could not have been dispensed with without notice when the plaintiff had been led to rely on it for his safety and the violation of the rule, while it stood, could have been found to amount to negligence. Consequently such decisions as O'Reilly v. Brooklyn Heights R. R. Co., 82 App.Div. 492, 494, 81 N.Y.S. 572; Taddeo v. Tilton, 248 App.Div. 290, 289 N.Y.S. 427, and Renoud v. City of New York, 251 App.Div. 868, 296 N.Y.S. 702, do not meet the present situation. The case might have been different if the plaintiff had not been aware of the duty assigned to Martin.

Judgment reversed.